UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALEX ROMAN,** | Civ. No. 19-5756 (KM) |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

    Before the Court is an appeal filed by claimant Alex Roman seeking review of the Administrative Law Judge's ("ALJ") partially favorable decision finding that, under the Social Security Act, claimant became disabled on July 21, 2015 rather than on the alleged onset date of September 1, 2014. (DE 7-2 at 30)[1] Because of that determination, claimant did not become eligible to receive disability insurance benefits or supplemental security income until the September 21, 2015.

    The claimant submits that the ALJ's decision failed to adequately consider his obesity and that her Residual Functional Capacity ("RFC") determination lacks substantial support in the record. (DE 18 at 11-12) The Commissioner asks the Court to affirm its final decision that claimant was not entitled to disability insurance benefits and supplemental income before July 21, 2015. (DE 19 at 4)

---

[1]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

    "DE" = Docket entry number in this case.

1

For the reasons explained in this opinion, I will deny claimant's appeal and affirm the appealed portion of the ALJ's decision, denying benefits for the period preceding July 21, 2015. For clarity, I state that this order leaves intact the award of benefits for the period beginning July 21, 2015.

## I.     Factual and Procedural Background

On April 12, 2013, claimant filed an application for a period of disability and disability insurance benefits and an application for supplemental security income. (DE 7-3 at 49) On both applications, claimant alleged that his disability began on September 1, 2014. (DE 7-3 at 49)

On October 21, 2015, the ALJ entered a partially favorable decision concluding that claimant was not disabled prior to September 2, 2015 but became disabled on that date and continued to be disabled through the date of the decision. (DE 7-3 at 45, 49) Claimant appealed that determination to the Appeals Council ("AC"), which affirmed the finding that claimant became disabled on September 2, 2015. (DE 7-3 at 62) However, the AC vacated the ALJ's decision and remanded the matter with respect to the issue of disability prior to that date.[2] (DE 7-3 at 62)

Following remand, on December 13, 2017, the ALJ entered a partially favorable determination finding that claimant became disabled as of July 21, 2015, but had not been disabled before that date. (DE 7-2 at 11) The AC denied claimant's request for review of the adverse portion of that decision, thereby

---

[2] The AC instructed the ALJ to: (1) "Further evaluate the claimant's alleged symptoms and provide rational in accordance with the disability regulations pertaining to evaluation of symptoms"; (2) "Give further consideration to the claimant's maximum [RFC] during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations"; and (3) "[E]valuate the acceptable medical source opinions . . . and explain the weight given to such opinion evidence." (DE 7-3 at 62-64) The AC also instructed the ALC to correct the claimant's date of birth. (DE 7-3 at 63) The ALJ found claimant became disabled on September 2, 2015 "when his age category changed to that of an individual of advanced age." (DE 7-3 at 63) However, claimant was born on July 21, 1960. (DE 7-3 at 63).

2

rendering the ALJ's determination a final decision of the agency. (DE 7-2 at 2) Claimant then filed this appeal. (DE 1)

## II. Legal Standard

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence

is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### III. ALJ Decision at Issue in this Appeal

The ALJ concluded in her post-remand decision that claimant had the capacity to perform light work until July 21, 2015. As of that date, however, he entered a higher age category; he became "an individual of advanced age (20 CFR 404.1563, 416.963)." As such, he met the requirements for a finding of disability. (DE 7-2 at 29).

First, the ALJ found that claimant had not engaged in gainful activity since the alleged onset date of September 1, 2014. (DE 7-2 at 20). Then, the ALJ found that since that date, "claimant has had the following severe impairments: diabetes mellitus, dysfunction of the back and major joints, bilateral knee pain due to osteoarthritis, sleep apnea, and obesity." (DE 7-2 at 20) The ALJ also found that claimant has non-severe impairments, including hypertension, removal of one kidney, and high cholesterol. (DE 7-2 at 20)

Next, the ALJ determined that since September 1, 2014, "claimant had not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Part A." (DE 7-2 at 22) With respect to listing 1.02, while "there is evidence that the claimant has been diagnosed with osteoarthritis," there is no evidence that his condition "result[ed] in [an] inability to perform fine and gross movements effectively, as required by listing 1.02." (DE 7-2 at 22) Regarding listing 1.04, claimant reported lower back pain, but the ALJ found "no evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-let raising test;

spinal arachnoiditis; or lumbar spinal stenosis." (DE 7-2 at 22) Finally, the ALJ found that claimant did not meet the requirements for any listing in section 4.00 because claimant has "no history of coronary artery disease with evidence of very serious limitations in the claimant's ability to independently initiate, sustain, or complete activities of daily living." (DE 7-2 at 22)

The ALJ then concluded that "since September 1, 2014, the claimant ha[d] the RFC to perform light work as defined in 20 CFR 404. 1567(b) and 416.967(b)[3] except that the claimant requires a five minute stretch break each hour." (DE 7-2 at 22) The ALJ also added the following caveat: "The claimant cannot climb ladders, ropes, or scaffolds. He must avoid extreme cold and hazards including moving mechanical parts and unprotected heights." (DE 7-2 at 22-23) The bases for the ALJ's RFC determination will be further discussed later in this opinion.

Next, the ALJ determined that given claimant's "age, education,[4] work experience,[5] and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed" prior to July 21, 2015, when his age category changed. (DE 7-2 at 29) Specifically, according to

---

[3] According to those provisions:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[4] "The claimant has at least a high school education and is able to communicate in English." (DE 7-2 at 29)

[5] According to the ALJ, the transferability of claimant's skills "is not an issue in this case because the claimant's past relevant work is unskilled." (DE 7-2 at 29)

5

the vocational expert who testified at claimant's hearing, Roman "would be able to perform the requirements of representative occupations" such as a "photocopying machine operator, a scaling and canceling machine operator, and an inspector and hand packager." (DE 7-2 at 30) The ALJ concluded that the expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (DE 70-2 at 30)

Because claimant had the capacity to perform light work prior to July 21, 2015, and because jobs existed in significant numbers that the claimant could have performed prior to that date, the ALJ entered a finding of "not disabled" for that period. (DE 7-2 at 30) However, the ALJ determined that claimant became disabled on July 21, 2015 and continued to be disabled through the date of the decision. (DE 7-2 at 30)

## IV. Claimant's Challenge to the ALJ's Decision

### a. Claimant's Challenge Regarding Step Three

Relying on *Diaz v. Commissioner of Social Security*, 577 F.3d 500 (3d Cir 2009), claimant first argues that the ALJ erred in failing to consider his morbid obesity in her step three listing analysis. (DE 18 at 16) In *Diaz*, the U.S. Court of Appeals for the Third Circuit held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." 577 F.3d at 504. There, the ALJ acknowledged the claimant's obesity as an impairment at step two, "but failed to consider its impact, in combination with her other impairments, at step three, as required." *Id.* at 503. The Court relied on Social Security Ruling 00-3p, which provides that a claimant's obesity should be considered on an individualized basis, with a focus "on the combined effect of obesity and other severe impairments afflicting the claimant." *Id.* Thus, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.* (internal quotation marks omitted) (quoting SSR 00-3p).

6

*Diaz* distinguished *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005), where remand was not required because the claimant never mentioned obesity as a condition that contributed to her inability to work. *Diaz*, 577 F.3d at 504. In *Diaz*, remand was required because the claimant asserted, and the ALJ determined, that her obesity constituted a severe impairment. *Id.* Further, the Court explained: "we cannot conclude, as we did in *Rutherford*, that Diaz's obesity had no impact, alone or in combination with her other impairments, on her workplace performance. To the contrary, Diaz's morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense if not medical diagnosis." *Id.* The Court held that "absent analysis of the cumulative impact of [the claimant's] obesity and other impairments on her functional capabilities," the Court cannot adequately review the ALJ decision. *Id.*

Here, the ALJ found that claimant's obesity constituted a severe impairment. (DE 7-2 at 20). Roman correctly notes that the ALJ did not explicitly discuss Roman's obesity in her step three listing analysis. (DE 7-2 at 22). This was in error. *See Diaz*, 577 F.3d at 504. Nevertheless, as will be discussed below, the ALJ thoroughly discussed Roman's obesity in the context of determining his RFC for light work. (DE 7-2 at 26-28) I therefore digress and discuss the analysis at Step Four, which bears on the harmlessness of any error, before returning to Step Three.

### b. Claimant's Challenge Regarding Step Four

Claimant contends that the ALJ's RFC determination is not supported by substantial evidence, offers no rationale, and "ignores the instructions of the prior AC remand and is formulated primarily on the ALJ's lay intuitions regarding the medical evidence." (DE 19 at 4). I disagree for the reasons explained blow.

The ALJ found that claimant was eligible for light work during the relevant time period because "claimant's statements concerning the intensity, persistence and limiting effects" of his medically determinable impairments were "not fully supported." (DE 7-2 at 24) The ALJ found "significant

7

inconsistencies" between the claimant's subjective complaints and the medical evidence of record. (DE 7-2 at 24) The record revealed that claimant engaged in activities of daily living that are inconsistent with allegedly disabling symptoms. (DE 7-2 at 24) For example, the claimant stated that he prepared his own meals, washed small loads of laundry, ironed, swept, travelled by foot or used public transportation, and attended church on a regular basis. (DE 7-2 at 24) With respect to the claimant's back, joint, and knee pain due to osteoarthritis, "a review of the medical evidence of record revealed evidence of the use of medications, but did not reveal evidence of frequent trips to the doctor or emergency department due to the claimant's experience of pain, frequent or regular sessions of physical therapy, or surgical interventions." (DE 7-2 at 24) The claimant also "has not been advised to constantly use an assistive device" to walk. (DE 7-2 at 24)

  Regarding the claimant's history of diabetes mellitus, his "treatment history did not reveal evidence of frequent visits to the primary care physician." (DE 7-2 at 25) As for the history of sleep apnea, the ALJ examined the recommendations of Dr. Garg, who advised claimant to "refrain from driving, operating heavy machinery, or performing any tasks requiring wakefulness," because "claimant suffered from severe obstructive sleep apnea and was partially complaint with CPAP therapy prescribed to him." (DE 7-2 at 25) The ALJ found Dr. Garg's opinions "quite conclusory" because "he did not provide explanation of the evidence relied on in forming that opinion." (DE 7-2 at 25)

  With respect to claimant's obesity, the ALJ noted that "Social Security generally considers a BMI in excess of 30 to be evidence of a severe impairment," noted that Roman's BMI is 42, and found "substantial medical evidence in support of a finding that the claimant's obesity significantly limits his ability to engage in work activity in combination with his other medically determinable impairments." (DE 7-2 at 26) The ALJ noted that claimant was being treated for his obesity and "was advised to modify his diet, exercise, and aim to bring his weight down." (DE 7-2 at 26)

8

The ALJ appropriately discussed the opinion evidence. The ALJ noted that neither of the two consultative doctors that examined claimant recommended that restrictions be placed on him. (DE 7-2 at 26-28) Dr. Rambhai observed that claimant "was in no acute distress," "walked without any walking device with a normal gait," "had normal dorsalis pedis," had normal reflexes, and "was able to squat and walk on his heels and toes." (DE 7-2 at 27) Dr. Rambhai so observed despite finding that claimant had diminished sensation is his left lower extremity and "had a little infection in the left and right great toe." (DE 7-2 at 27) While Dr. Rambhai noted that the possibilities of arthritis and neuritis could not be ruled out, he "assessed that the claimant could walk at a reasonable pace and reiterated that the claimant did not use a hand held assistive device." (DE 7-2 at 27)

Dr. Allen noted that claimant "had full range of motion in the neck, shoulders, elbows, wrists, and hands"; had full range of motion in his back; "full range of motion of the left knee"; and "satisfactory peripheral pulses in both feet." (DE 7-2 at 27) Dr. Allen found "that there was evidence of patellofemoral tenderness" but "no evidence of any effusion." (DE 7-2 at 27) Dr. Allen "offered impressions of lower back pain, but noted no evidence of any disc herniation"; and "offered impressions of moderately severe narrowing of the medial joint line of the right knee . . . [and] moderately severe osteoarthritis of the right knee." (DE 7-2 at 27-28) Nevertheless, Dr. Allen noted that "claimant's gait was normal upon entering and leaving the examining room." (DE 7-2 at 28)

The ALJ also considered the opinions of state medical examiners. (DE 7-2 at 28) Dr. Shastry, who reviewed the evidence in claimant's case through August 2, 2013, assessed that claimant "was able to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and stand, walk, and sit about six hours in an eight-hour work day." (DE 7-2 at 28) The doctor also expressed that claimant "could occasionally kneel, crouch, and crawl," but noted that he "would need to avoid concentrated exposure to extreme cold and hazards." (DE 7-2 at 28) That assessment was affirmed by Dr. Housri who also reviewed the evidence. (DE 7-2 at 28) The ALJ granted the opinions of Drs.

9

Shastry and Housri significant weight, but not great weight, because the doctors did not personally examine, meet with, or interview the claimant, and because additional medical records had been admitted since those consultants rendered their opinions. (DE 7-2 at 28)

Considering all of the evidence and medical opinions, the ALJ properly concluded that claimant "retained the ability, despite his impairments" to perform light work in the period preceding July 21, 2015. (DE 7-2 at 28-29) The ALJ thoroughly explained the evidence relied on in making the determination. Two state doctors concluded that claimant can lift or carry ten to twenty pounds and can stand, walk, and sit for six hours; two examining doctors -- who were presumably aware of claimant's weight and height -- noted that claimant walked, unassisted, with a normal gate; Dr. Allen noted that claimant had full range motion in his neck, arms, back, and left knee; Dr. Rambhai noted that claimant had normal reflexes and was not in acute distress. Those medical opinions provide "relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's light work RFC determination. *See Jones*, 364 F.3d at 503. The ALJ considered claimant's obesity and found his obesity significantly limited his ability to engage in certain work activity. (DR 7-2 at 26). Nevertheless, relying on the medical opinions of record, the ALJ determined that claimant was able to engage in certain light work "*despite his impairments*." (DE 7-2 at 29 (emphasis added)) Those examinations and opinions provide substantial support for the ALJ's determination.

### c. The ALJ's Failure to Consider Claimant's Obesity in Step Three is Harmless Error

Roman very appropriately points to a procedural error, *i.e.,* the failure to discuss obesity at step three. Such failures to adhere to the stepwise analysis mandated by the SSA and regulations have independent importance, and may often require reversal. Often, but not always. Because the ALJ thoroughly considered Roman's obesity in determining his RFC, I find the judge's failure to

discuss obesity in connection with step three to be harmless error. *See Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015) (rejecting the claimant's argument that the ALJ failed to consider his obesity when the ALJ explicitly consider his obesity in assessing the claimant's RFC.) Roman makes a sterile claim of procedural error; he fails to explain or point to any evidence of record as to how his obesity alone or in combination with other impairments either meets one of the listing impairments or impedes his ability to perform light work. *See Carter v. Comm's of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (holding that remand was not required because the claimant merely argued that "obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities."); *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (2016) (finding harmless error where the claimant complained "that his circumstances were not compared to the listings" but "never explain[ed] how, even if the ALJ's analysis was lacking, the deficiency was harmful to his claims."); *Mack v. Comm's of Soc. Sec.*, 2017 WL 1033774, at *6 (D.N.J. Mar. 16, 2017) (citing *Rutherford*, 399 F.3d at 553) (noting that "remand is unwarranted, even if an ALJ fails to mention obesity, if plaintiff fails to specify how his weight impaired his ability to work, particularly where the ALJ has relied on physicians who were aware of the plaintiff's weight and height.").

     Concededly, the ALJ could and should have more clearly assessed claimant's obesity at step three, and expressed why, despite his obesity, the medical opinions that claimant could engage in light work (before July 21, 2015, that is) were still credible. However, the claimant does not clearly express to this Court how his obesity undermines the ALJ's conclusion that he could engage in light work. The ALJ clearly pointed to medical evidence in the record indicating that claimant could, for example, lift ten to twenty pounds, could walk unassisted, and move most of his body within a normal range. Claimant points to no medical evidence indicating that his obesity inhibits him from doing any of those things. All claimant has submitted to this Court is that

11

obesity *can* impose functional limitations but has not shown how *his* obesity imposes those functional limitations.

"[T]he burden of showing an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 US 396, 409 (2009). The bottom-line issue here is whether the claimant was able, in the relevant period, to engage in employment. The ALJ thoroughly analyzed obesity in relation to that issue—not at step three, but immediately thereafter, at step four. Under these circumstances, the claimed error was harmless. I find that remand is not warranted because claimant failed to establish the ALJ's errors were harmful to his claim.

### V. Conclusion

For the reasons set forth above, I will deny claimant's appeal and affirm the ALJ's partially favorable decision. More specifically, the finding of non-disability prior to July 21, 2015, is affirmed. The finding that the claimant was disabled starting on that date and continuing through the date of the ALJ's decision is not affected.

An appropriate order follows.

Dated: October 26, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**